ORIGINAL SEALED
BY ORDER OF THE COURT

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
AUG 19 2021
at 3 o'clock and 45 min. P M
MICHELLE RYNNE, CLERK

JUDITH A. PHILIPS
Acting United States Attorney
District of Hawaii

MICHAEL F. ALBANESE #9421
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
E-mail: michael.albanese@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. NO. CR 21-00111 DKW |
| Plaintiff, | INDICTMENT |
| vs. | [18 U.S.C. §§ 1349, 1343, and 1957] |
| RICHARD PATTERSON a/k/a Xavier Carter, (01)<br>DASHAWN HILL, (02)<br>JUDY RAMOS, (03) | |
| Defendants. | |

INDICTMENT

The Grand Jury charges:

## INTRODUCTORY ALLEGATIONS

At all times material to this Indictment, unless otherwise specified:

1. RICHARD PATTERSON ("PATTERSON"), a.k.a. "Xavier Carter," was a resident of Hawaii and subsequently Nevada. PATTERSON purported to be involved in the banking and finance industry and used the company names Hawaiian Crush, Inc. ("HCI"), Aloha Aina, Ltd. ("ALOHA AINA"), First Securities & Trust of Switzerland AG ("FSTS"), Red Rock Equity Group, LLC, and Advance Development Group, LLC. PATTERSON maintained business and personal bank accounts, at various times, in Hawaii, Minnesota, and South Dakota.

2. DASHAWN HILL ("HILL") was a resident of Oklahoma. HILL purported to be involved in the banking and finance industry and used company names Thoroughbred Research and Investments, Inc. and other related companies that utilized the "Thoroughbred" moniker, and FSTS. HILL was a licensed mortgage originator from April 2014 to January 2016. HILL was also the President of a company, Classen Crown Investments, Inc., that filed, unsuccessfully, for Chapter 11 bankruptcy in both 2015 and 2017. HILL maintained business and personal bank accounts in Oklahoma.

3. JUDY RAMOS ("RAMOS") was a resident of Hawaii. RAMOS purported to be involved in the banking and finance industry and used the company

names Aloha Global, Inc. ("ALOHA GLOBAL") and Sand and Sky Consulting. RAMOS maintained business and personal bank accounts in Hawaii and Nevada.

4. The term "security" generally refers to a tradeable financial asset. Some common examples are stocks, bonds, and certificates of deposit.

5. The State of Hawaii Department of Commerce and Consumer Affairs ("DCCA") regulates firms and persons who sell securities in Hawaii, and requires those firms and persons to be registered with the State of Hawaii as broker dealers, security salespersons, and/or investment advisor representatives. At all times relevant to this Indictment, PATTERSON, RAMOS, and HILL, as well as their respective companies described above, were not licensed or registered in Hawaii through DCCA to sell securities in any form.

6. The United States Securities and Exchange Commission ("SEC") regulates the sales of securities by broker dealers, representatives, and investment advisors in the United States. The SEC requires all broker dealers, investment advisors, and associated representatives to register with the Financial Industry Regulatory Authority ("FINRA") prior to selling or issuing securities. At all times relevant to this Indictment, PATTERSON, HILL, and RAMOS, as well as their respective companies described above, were not licensed or registered with FINRA to sell securities in any form.

7.  Both the State of Hawaii and the SEC require that any security sold in Hawaii be registered. The State of Hawaii requires that such securities be registered with the DCCA. No securities were registered by any of the Defendants or their companies with the DCCA or the SEC.

COUNT 1
Conspiracy to Commit Wire Fraud
(18 U.S.C. §§ 1349 and 1343)

8.  The allegations of paragraphs 1 through 7 are hereby incorporated and re-alleged as if set forth fully herein.

9.  From a precise earlier date unknown, but by at least in or around July 2015, and continuing to at least in or around October 2018, in the District of Hawaii and elsewhere, RICHARD PATTERSON, DASHAWN HILL, and JUDY RAMOS, the defendants, did knowingly and willfully combine, conspire, confederate, and agree with each other and other persons both known and unknown, to knowingly and willfully devise a scheme and artifice to defraud, that is with the intent to deceive and cheat, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, as well as by the omission of material facts, well knowing at the time that such pretenses, representations, and promises, would be and were false when made, which scheme was furthered by the use of interstate wire communications, in violation of Title 18, United States Code, Section 1343.

Manner and Means of the Conspiracy

10. Beginning by at least in or around July 2015, PATTERSON, HILL, and RAMOS, the Defendants, engaged in an "advanced payment scheme." The mechanics of the scheme are that one or more of the Defendants would solicit from a victim-investor an upfront payment that would purportedly be used to generate much larger sums of money for the victim-investor after a short period. As the Defendants knew, the upfront payment was not invested at all, and had no reasonable possibility of generating the promised return.

11. In furtherance of that scheme, the Defendants falsely represented to potential victim-investors that that the Defendants were wealthy financial professionals, and further, that PATTERSON and HILL owned a financial institution that was properly registered in Switzerland and that was capable of, among other things, accepting investor deposits, issuing debit or credit cards, and generating investment returns.

12. The Defendants solicited up-front payments to purportedly setup financial products such as "lines of credit" or "non-recourse loans." These financial products were represented as legitimate funding vehicles that generated returns of two hundred percent (200%) to one thousand percent (1,000%). Defendants told potential victim-investors that both the initial deposit and the

promised returns were "secured" by gold or other means, and that there was little or no risk in the investment.

13. The Defendants referred, at times, to PATTERSON by the alias "Xavier Carter" in an effort to bolster their bona fides and prevent potential investors from viewing negative publicly available information regarding PATTERSON's prior criminal history involving investment fraud. PATTERSON utilized a fake accent when purporting to be the alias "Xavier Carter." The Defendants knew PATTERSON's accent and name were not genuine, and that "Xavier Carter" was actually PATTERSON, but concealed this information from investors.

14. The upfront payments paid by investors were divided up amongst the Defendants through multiple payments back and forth between Defendants' bank accounts using wire transmissions. The funds were then used to pay the Defendants' personal expenses, such as credit card bills, rent, entertainment expenses, and other expenses, none of which were investments and had no potential to earn the returns promised to the investors in exchange for the upfront payments.

15. During the course of the conspiracy, the Defendants collectively solicited over $2,500,000 in upfront payments from investors, and only returned

approximately $163,000, some of which was derived from the payments of other victim-investors.

## Overt Acts

16. In furtherance of the conspiracy, and to effect the objects thereof, the conspirators committed various overt acts in the District of Hawaii and elsewhere, including the following:

   a. On or about November 25, 2016, in a recorded telephone call with alleged victim-investor J.V., HILL knowingly misrepresented the risk of "investing" with the Defendants and falsely inflated the value of HILL's assets. Specifically, HILL falsely represented that he possessed bonds that allowed him to offer an "asset-backed security" or "mortgage-backed security" and that a "pretty conservative" estimate of his business' value was "probably about three billion" dollars.

   b. On or about April 14, 2017, PATTERSON, on behalf of ALOHA AINA, and victim-investor W.T. executed a Memorandum of Understanding, in which victim-investor W.T. agreed to transfer $100,000 to ALOHA AINA, in exchange for which, ALOHA AINA agreed to deposit $300,000 into an account in victim-investor W.T.'s name in FSTS within 28 days and an additional $700,000 within another 28 days.

7

      c.     On or about June 7, 2017, HILL e-mailed a promissory note to PATTERSON for victim-investor J.P.'s signature, but "Kailua," the town in which J.P. resided, was misspelled. Less than an hour later, after communicating with PATTERSON, HILL e-mailed an updated promissory note for J.P. that spelled "Kailua" correctly.

      d.     On or about June 7, 2017, PATTERSON and victim-investor J.P. executed a promissory note, in which ALOHA AINA, PATTERSON's company, agreed to pay victim-investor J.P. the sum of $500,000 on August 11, 2017.

      e.     On or about August 17, 2017, RAMOS and victim-investor J.P. executed a promissory note, in which ALOHA GLOBAL, RAMOS' company, agreed to make a line of credit available to victim-investor J.P. or pay victim-investor J.P. the sum of $300,000 on November 17, 2017.

      f.     Between August 17, 2017 and August 25, 2017, RAMOS sent a text message to J.P. and falsely stated that J.P.'s investment was performing as agreed and that RAMOS was "impressed w[ith] the structures and how everything is growing."

      g.     On or about September 5, 2018, RAMOS sent a text message to victim-investor M.R. in which she referred to PATTERSON as "Carter," and

stated that "Carter's funds… have been verified as legal and real." RAMOS knew at the time that "Carter" was, in fact an alias for PATTERSON.

All in violation of Title 18, United States Code, Sections 1349 and 1343.

COUNTS 2 – 8
Wire Fraud
(18 U.S.C § 1343)

17. The allegations of paragraphs 1 through 16 are hereby incorporated and re-alleged as if set forth fully herein.

18. From a precise earlier date unknown, but by at least in or around July 2015, and continuing to in or around October 2018, within the District of Hawaii and elsewhere, RICHARD PATTERSON, DASHAWN HILL, and JUDY RAMOS, the defendants, did knowingly devise and intend to devise a scheme and artifice to defraud, that is with the intent to deceive and cheat, and to obtain money from others by means of materially false and fraudulent pretenses, representations, and promises, as well as by omissions of material facts, well knowing at the time that such pretenses, representations, promises, and omissions would be and were false when made.

Manner and Means of the Scheme to Defraud

19. As described in Count 1, the fraudulent scheme operated, in substance, in the following manner:

a. The Defendants solicited victim-investors to pay upfront payments to the Defendants, in exchange for which, the Defendants promised to provide the victim-investors with access to a larger sum of money after a short, defined time period, typically two to three months. The Defendants described this larger sum as a "line of credit," "non-recourse loan," or similar financial vehicle, which the Defendants falsely described as legitimate investing and financing vehicles available exclusively to clients working with them. The Defendants further falsely represented that the upfront payment and the return were guaranteed by gold or other securities, and thus, the victim-investor faced little to no risk.

b. In order to convince victim-investors of the legitimacy of the investment, the Defendants falsely represented that they had access to complicated, exclusive financial transactions through a Swiss financial institution, FSTS, purportedly owned by PATTERSON and HILL. In reality, and as the Defendants knew, FSTS was a shell company purchased by PATTERSON and HILL that was not capable or licensed to operate as a bank or financial institution.

c. To convince victim-investors to provide the Defendants with money, the Defendants made false representations about their own business acumen and success and personal wealth. In making such false representations, the Defendants failed to disclose material information from the victim-investors, including without limitation, (i) PATTERSON's prior federal conviction for

investment fraud and status on federal probation; (ii) two bankruptcies related to one of HILL's companies; and (iii) the fact that none of the Defendants were licensed or registered to carry out the financial transactions that they offered to the victim-investors.

        d.      In truth, and as the Defendants then knew, the Defendants had neither the ability nor the intention to follow through on the promises made to the victim-investors. Instead, the Defendants utilized the money received from the victim-investors to enrich themselves, fund personal travel and entertainment expenses, pay costs associated with perpetuating their scheme, and make "Ponzi-type" partial payments to previous investors, all without the knowledge or authorization of the victim-investors.

## The Wire Transmissions

20.    On or about the dates set forth below, within the District of Hawaii and elsewhere, and for the purpose of executing the scheme and artifice to defraud, and attempting to do so, the Defendants listed below did cause to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count of this Indictment.

| Ct. | Def. | Date | Description of Wire Communication |
|---|---|---|---|
| 2 | PATTERSON and HILL | 03/01/2017 | $54,000 wire transfer from victim-investor P.D.'s American Savings Bank account to First Fidelity Trust AG's bank account in |

| Ct. | Def. | Date | Description of Wire Communication |
|---|---|---|---|
|  |  |  | Switzerland for PATTERSON and HILL's purchase of FSTS, a Swiss shell company. |
| 3 | PATTERSON and HILL | 03/02/2017 | $51,000 wire transfer from victim-investor P.D.'s American Savings Bank account to First Fidelity Trust AG's bank account in Switzerland for PATTERSON and HILL's purchase of FSTS, a Swiss shell company. |
| 4 | PATTERSON, HILL, and RAMOS | 04/14/2017 | E-mail from HILL to PATTERSON with victim-investor W.T's Memorandum of Understanding attached, in which HILL and PATTERSON falsely promised to deposit funds into an account with FSTS on behalf of victim-investor W.T. |
| 5 | PATTERSON, HILL, and RAMOS | 06/08/2017 | $100,000 wire transfer from victim-investor J.P.'s University of Hawaii Federal Credit Union account to PATTERSON's HCI bank account. |
| 6 | PATTERSON | 07/13/2017 | $200,000 wire transfer from victim-investor R.B.'s Central Pacific Bank account to PATTERSON's HCI bank account. |
| 7 | PATTERSON, HILL, and RAMOS | 08/17/2017 | $100,000 wire transfer from victim-investor J.P.'s University of Hawaii Federal Credit Union account to RAMOS' J.P. Morgan Chase ("JPMC") bank account. |
| 8 | PATTERSON and RAMOS | 02/23/2018 | Text messages sent by RAMOS to victim-investor M.R. in which RAMOS provided account information for victim-investor M.R. to send a payment of $45,000 to RAMOS' JPMC bank account. |

All in violation of Title 18, United States Code, Section 1343.

<u>COUNTS 9 – 13</u>
Engaging in Monetary Transactions in Criminally Derived Property
(18 U.S.C. § 1957)

21. The allegations of paragraphs 1 through 20 are hereby incorporated and re-alleged as if set forth fully herein.

22. On or about the dates set forth below, in the District of Hawaii and elsewhere, RICHARD PATTERSON, the defendant, did knowingly engage and attempt to engage in a monetary transaction by, through, or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000 of U.S. Currency, such property having been derived from a specified unlawful activity, namely, wire fraud in violation of Title 18, United States Code, Section 1343 and 1349, with each monetary transaction described below constituting a separate count of this Indictment.

| Count | Defendant | Date | Financial Transaction |
|---|---|---|---|
| 9 | PATTERSON | 7/31/2017 | Wire in the amount of $65,000 from PATTERSON's U. S. Bank ("USB") Account …326 account to victim W.T.'s account. |
| 10 | PATTERSON | 12/11/2017 | Wire in the amount of $20,000 transacted from PATTERSON's USB Account …326 to RAMOS' JPMC Account …011. |
| 11 | PATTERSON | 12/12/2017 | Wire in the amount of $15,000 transacted from PATTERSON'S USB Account #326 to RAMOS' JPMC Account#011. |
| 12 | PATTERSON | 2/20/2018 | Wire in the amount of $400,000 transacted from PATTERSON's USB Account #326 to HILL's BancFirst ("BF") Account #244. |
| 13 | PATTERSON | 2/26/2018 | Check in the amount of $60,874.63 transacted from PATTERSON's USB Account #236 to PATTERSON'S CITI Account #919. |

All in violation of Title 18, United States Code, Section 1957.

## COUNT 14
Engaging in Monetary Transactions in Criminally Derived Property
(18 U.S.C. § 1957)

23. The allegations of paragraphs 1 through 20 are hereby incorporated and re-alleged as if set forth fully herein.

24. On or about the dates set forth below, in the District of Hawaii and elsewhere, JUDY RAMOS, the defendant, did knowingly engage and attempt to engage in a monetary transaction by, through, or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000 of U.S. Currency, such property having been derived from a specified unlawful activity, namely, wire fraud in violation of Title 18, United States Code, Section 1343 and 1349, with each monetary transaction described below constituting a separate count of this Indictment.

| Count | Defendant | Date | Financial Transaction |
|---|---|---|---|
| 14 | RAMOS | 8/23/2017 | Wire in the amount of $20,000 transacted from RAMOS' JPMC Account …011 to PATTERSON'S USB Account …326. |

All in violation of Title 18, United States Code, Section 1957.

## FIRST FORFEITURE NOTICE

1. The allegations contained in all paragraphs of Counts 1 through 8 of this Indictment are hereby realleged and incorporated by reference for the purpose

14

of noticing forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2. The United States hereby gives notice to the defendants that, upon conviction of the offenses charged in Counts 1 through 8 of the Indictment, the government will seek forfeiture, in accordance with Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), of any and all property, real or personal, that constitutes or is derived from proceeds traceable to the violations of Title 18, United States Code, Sections 1343 and 1349, alleged in this Indictment, including but not limited to a sum of money equal to $2,429,000.

3. If by any act or omission of the defendant, any of the property subject to forfeiture described in paragraph 2 herein:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty,

the United States of America will be entitled to forfeiture of substitute property up to the value of the property described above in paragraph 2, pursuant to Title 21,

United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

## SECOND FORFEITURE NOTICE

1. The allegations contained in all paragraphs of Counts 9 through 14 of this Indictment are realleged and incorporated by reference for the purpose of noticing forfeitures pursuant to Title 18, United States Code, Section 982.

2. The United States hereby gives notice to the defendants that, upon conviction of the offenses in violation of Title 18, United States Code, Section 1957, charged in Counts 9 through 14 of the Indictment, the government will seek forfeiture, pursuant to Title 18, United States Code, Section 982(a)(1), of any and all property, real or personal, involved in the offense and all property traceable to such property, including but not limited to a sum of money equal to at least the following amounts:

| Defendant | Amount |
|---|---|
| Richard Patterson | $560,874.63 |
| Judy Ramos | $20,000 |

3. If by any act or omission of the defendants, any of the property subject to forfeiture described in paragraph 2 herein:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to forfeiture of substitute property up to the value of the property described above in paragraph 2, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

Dated: August 19, 2021 at Honolulu, Hawaii.

                             A TRUE BILL

                             /s/ Foreperson
                             FOREPERSON, Grand Jury

for _/s/_
JUDITH A. PHILIPS
Acting United States Attorney
District of Hawaii

_/s/_
MICHAEL F. ALBANESE
Assistant U.S. Attorney

United States v. Richard Patterson et al
Indictment
Cr. No. CR 21-00111 DKW